## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAY CRAVEN,<br><br>Plaintiff,<br><br>vs.<br><br>AKERS BIOSCIENCES, INC., CHRISTOPHER C. SCHREIBER, JOSHUA SILVERMAN, BILL J. WHITE, and ROBERT C. SCHROEDER,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Ray Craven ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

### NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action against Akers Biosciences, Inc. ("Akers" or the "Company") and the members of Akers' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to merge Akers with MyMD Pharmaceuticals, Inc. ("MyMD") through Akers' subsidiary XYZ Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On November 12, 2020, Akers announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, upon closing of the Proposed Transaction, current Akers shareholders will own approximately 20% of the combined company,

and current MyMD's shareholders will own approximately 80% of the combined company on a fully diluted basis.

3.       On January 15, 2021, Akers filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC.  The Registration Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) the Company's and MyMD's financial projections and the financial analyses performed by Gemini Valuation Services, LLC ("GVS"); (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest faced by the Company's financial advisors, Palladium Capital Advisors, LLC ("Palladium") and Biologics Consulting Group, Inc. ("Biologics").  Without additional information, the Registration Statement is materially misleading in violation of the federal securities laws.

4.       The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains offices in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

### THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Akers.

9.      Defendant Akers is a Delaware corporation, with its principal executive offices located at 1185 Avenue of the Americas, 3rd Floor, New York, NY 10036 and manufacturing and production facilities located at 201 Grove Rd, Thorofare, New Jersey 08086.  Akers' common stock trades on the Nasdaq Capital Market under the ticker symbol "AKER."

10.     Defendant Christopher C. Schreiber is President and Chief Executive Officer ("CEO") of the Company and has served as a director since August 8, 2017.

11.     Defendant Joshua Silverman is Chairman of the Board and has served as a director of the Company since September 6, 2018.

12.     Defendant Bill J. White has served as a director of the Company since August 8, 2017.

13.     Defendant Robert C. Schroeder has served as a director of the Company since November 1, 2019.

14.     Defendants identified in paragraphs 10-13 are referred to herein as the "Board" or the "Individual Defendants."

15.     Relevant non-party MyMD is a clinical stage pharmaceutical company focused on extending healthy lifespan by developing two therapeutic platforms: (1) MYMD-1 is a drug platform based on a clinical stage small molecule that regulates the immunometabolic system to control TNF-α and other pro-inflammatory cytokines, and (2) SUPERA-1R is a drug platform based on a novel (patent pending) synthetic derivative of cannabidiol ("CBD") that targets numerous key receptors including CB2 and opioid receptors and inhibits monoamine oxidase.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

16.     Akers is historically a developer of rapid health information technologies.  Akers is currently pursuing rapid development and manufacturing of a COVID-19 vaccine candidate in collaboration with Premas Biotech PVT Ltd ("Premas Biotech").  On March 23, 2020, Akers acquired 100% of the membership interests of Cystron Biotech, LLC ("Cystron").  Cystron was incorporated on March 10, 2020 and is a party to a license agreement with Premas Biotech whereby Premas Biotech granted Cystron, among other things, an exclusive license with respect to Premas Biotech's genetically engineered yeast (S. cerevisiae)-based vaccine platform, D-Crypt, for the development of a vaccine against COVID-19 and other coronavirus infections.

17.     On October 16, 2020, Akers announced its third quarter and nine-month period 2020 financial results, including cash of $16.2 million as of the nine-month period ended September 30, 2020, as compared with cash of $0.5 million at December 31, 2019; and total current assets of $23.6 million, as compared with total current assets of $10.3 million at December 31, 2019.

18.     On November 12, 2020, Akers and MyMD issued a joint press release announcing

the Proposed Transaction.  The press release states, in relevant part:

> BALTIMORE & THOROFARE, N.J.-- MyMD Pharmaceuticals, Inc. ("MyMD")
> and Akers Biosciences, Inc. ("Akers") (NASDAQ: AKER) today jointly
> announced that they have entered into a definitive merger agreement. Upon closing
> the transaction, the combined company is expected to be renamed MyMD
> Pharmaceuticals, Inc. and remain listed on the Nasdaq under the new ticker symbol
> "MYMD."

***

> The transformational partnership will create greater scale to drive growth, improve
> profitability and enhance stockholder value.  The transaction brings together the
> complementary strengths of First Citizens' low-cost retail deposit franchise and full
> suite of banking products with CIT's national commercial lending expertise and
> strong market positions.  In addition, it creates a more diversified deposit strategy
> with First Citizens' 550+ full-service retail banking locations in key growth MSAs,
> including across the Southeast, and CIT's rapidly growing homeowner association
> business, leading direct bank and complementary Southern California retail branch
> network.

> Following the merger, the two companies will join as one to focus on developing
> and commercializing MyMD's novel immunotherapy pipeline assets, including
> MYMD-1, a first-in-class drug being developed to treat autoimmune and age-
> related diseases, including extending the human lifespan. MYMD-1 has been
> shown to be effective in regulating the immune system from causing age-related
> diseases in preclinical studies and MyMD believes that it is the first oral small
> molecule regulator of tumor necrosis factor alpha (TNF-$\alpha$) capable of crossing the
> blood-brain barrier. Looking forward, MyMD intends to also continue to develop
> its second asset, SUPERA-1R, a drug platform based on a patent-protected,
> synthetic derivative of cannabidiol (CBD) that seeks to target key cannabinoid
> receptors.

> A Phase 1 study on MYMD-1 has been completed, with plans to begin two Phase
> 2 clinical trials in Q1 2021 and additional Phase 2 clinical trials throughout 2021.
> Preclinical data, showing the effectiveness of MyMD-1 in treating autoimmune
> diseases, were compiled by nationally recognized researchers and laid the
> foundation for the studies, securing peer-reviewed publications in The Journal of
> Immunology and the Journal of Neuroimmunology.

> "Over the last seven years, MyMD has advanced its robust drug development
> program, achieving very encouraging preclinical and Phase 1 clinical data," said
> Chris Chapman, M.D., Chief Medical Officer of MyMD. "As we enter Phase 2
> clinical trials and continue to advance our drug candidates toward

commercialization--we believe this merger is the natural next step for us. Gaining access to the public capital markets, along with Akers' capital resources, should allow us to accelerate our plans and elevate MyMD within the emerging fields of aging, immunometabolic regulation and TNFα inhibition."

The mechanism of action for MYMD-1 involves shutting down the production of TNF-α, offering the potential to reshape clinical guidelines and treatment approaches for aging and a number of autoimmune diseases including diabetes, rheumatoid arthritis and multiple sclerosis.

Reflecting on the rationale for the merger, Chris Schreiber, Executive Chairman and President of Akers, stated, "We are excited about this strategic opportunity to focus on MyMD's promising clinical development program and worldwide patent position. Through this transaction, the company will be committed to delivering novel, multi-indication platform drugs designed to extend healthy lifespan and treat the source of chronic autoimmune diseases. We are highly excited about MyMD's broad development program focused on two drug platforms that address enormous market potential. We believe that our merger with MyMD should provide us with additional value creation opportunities, in addition to our COVID-19 vaccine candidate that we have been working with our partners in India to develop."

**Management and Organization**

The combined company will be led by Chris Chapman, M.D., who will become President and Chief Medical Officer of MyMD, and Adam Kaplin, M.D., who will become Chief Scientific Officer of MyMD, and is planned to be headquartered in Baltimore, Maryland. Dr. Chapman is the founder and CEO of Chapman Pharmaceutical Consulting Inc. and will bring extensive experience working with biotechnology companies in the design of clinical trial protocols, conducting clinical trials and advising on regulatory and medical affairs. Dr. Kaplin, the prior founder and chief of the Neuropsychiatric CNS Autoimmune Consultation Clinic, at the Johns Hopkins Multiple Sclerosis Center of Excellence, and an assistant professor of psychiatry and behavioral sciences at the Johns Hopkins University School of Medicine, has consulted with multiple hospitals, biotechnology companies and non-profit organizations on medical and development matters.

**Transaction Details**

On a pro forma basis and based upon the number of shares of Akers common stock to be issued in the merger, current Akers' shareholders will own approximately 20% of the combined company, on a fully diluted basis, and current MyMD's shareholders will own approximately 80% of the combined company on a fully diluted basis (excluding the effect of warrants issued in the below described private placement). The merger agreement also provides for additional contingent payments in cash and shares to the stockholders of MyMD under certain circumstances. The merger is expected to close in the first half of 2021, subject to

the approval of Akers' shareholders at a special shareholder meeting, as well as other customary closing conditions.

In connection with the definitive merger agreement, Akers agreed to loan MyMD up to $3 million pursuant to a secured promissory note. The note bears interest at 5% per annum, has a maturity date of April 15, 2022 and is secured by a first lien on MyMD's assets.

**Private Placement**

Concurrently with the execution of the merger agreement with MyMD, Akers entered into a securities purchase agreement with certain accredited investors to raise $18 million through the issuance of up to 9,765,933 shares of common stock (or common stock equivalents) and accompanying warrants to purchase an aggregate of up to 9,765,933 shares of common stock at $1.85 per share of common stock and accompanying warrant. The warrants are immediately exercisable at an exercise price of $2.06 per share, with an expiration date of five and one-half years after the date of issuance. The offer and sale of the foregoing securities are being made in a transaction not involving a public offering and have not been registered under the Securities Act of 1933, as amended (the "Securities Act"), or applicable state securities laws.

Accordingly, the securities may not be reoffered or resold in the United States except pursuant to an effective registration statement or an applicable exemption from the registration requirements of the Securities Act and such applicable state securities laws.

Under an agreement with the investors, the Company is required to file a registration statement with the Securities and Exchange Commission covering the resale of the shares of common stock to be issued to the investors and to use best efforts to have the registration statement declared effective as promptly as practical thereafter.

The closing of the private placement is subject to the satisfaction of certain customary closing conditions set forth in the securities purchase agreement.

**The Registration Statement Contains Material Misstatements or Omissions**

19.     On January 15, 2021, defendants filed the materially misleading and incomplete Registration Statement with the SEC.  Designed to convince Akers' stockholders to vote in favor of the Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning: (i) the Company's and MyMD's financial projections and the

financial analyses performed by GVS; (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest faced by the Company's financial advisors, Palladium and Biologics.

***Material Omissions Concerning the Company's and MyMD's Financial Projections and GVS' Financial Analyses***

20.     The Registration Statement omits material information regarding the Company's and MyMD's financial projections.

21.     For example, the Registration Statement sets forth:

The Projections were not prepared with a view towards public disclosure or in compliance with the guidelines of the SEC or the American Institute of Certified Accountants. The Projections are based on a number of assumptions and subject to numerous uncertainties and risks, including, without limitation, those contained in the Risk Factors beginning on page 57 of this joint proxy and consent solicitation statement/prospectus and including a number of matters outside the control of MYMD and Akers. None of MYMD, Akers or GVS makes any representation that the Projections will be achieved and the differences between actual results and the Projections may be substantial. Neither Akers' independent public accounting firm, nor MYMD's independent accounting firm, nor any other independent accountants, has compiled, examined or performed any procedures with respect to the Projections, nor have they expressed any opinion or any other form of assurance on such information or its achievability, and assume no responsibility for, and disclaim any association with, the Projections.

Registration Statement at 151.   Additionally, the Registration Statement sets forth that in connection with its fairness opinion, GVS reviewed "certain internal financial analyses and forecasts ("Projections") prepared by and provided to GVS by the management of MYMD relating to MYMD's business."  *Id*. at 145.  The Registration Statement, however, completely omits the Company's and MyMD's financial projections.

22.     The Registration Statement also fails to disclose material information concerning GVS' financial analyses.

23.     The Registration Statement describes GVS' fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of GVS' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.

Without this information, as described below, Akers' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on GVS' fairness opinion in determining whether to vote in favor of the Proposed Transaction.

24.     With respect to GVS' *Akers Valuation Analysis*, the Registration Statement fails to disclose each of the companies and transactions GVS observed in the analysis and GVS' basis for selecting the companies and transactions.

25.     With respect to GVS' *Relative Valuation Analysis*, the Registration Statement fails to disclose the pro forma net cash figure utilized in the analysis.

26.     The omission of this material information renders certain portions of the Registration Statement materially misleading, including, inter alia, the following sections of the Registration Statement: "Certain Financial Projections" and "Opinion of Akers' Financial Advisor."

***Material Omissions Concerning the Background of the Proposed Transaction***

27.     The Registration Statement fails to disclose material information concerning the background of the Proposed Transaction.

28.     For example, the Registration Statement fails to disclose whether the Company entered into confidentiality agreements with any parties during the sale process that include "don't-ask, don't-waive" ("DADW") standstill provisions that are presently precluding any of these parties from submitting a proposal to the Company.

29.     Any reasonable Akers stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a proposal to the Company to significantly alter the total mix of information.

30.     The Registration Statement further fails to set forth the specific details of the term sheet Palladium put together after the July 17, 2020 meeting between Akers and MyMD and the term sheet approved by the Board at its August 17, 2020 Board meeting, including: (i) quantification of the valuations included in the term sheets; (ii) the methodologies used to determine the valuations; and (iii) the considerations and assumptions underlying such valuations.

31.     The omission of this material information renders certain portions of the Registration Statement materially misleading, including, inter alia, the following section of the Registration Statement: "Background of the Merger Between Akers and MYMD."

***Material Omissions Concerning Palladium's and Biologics' Potential Conflicts of Interest***

32.     The Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by the Company's financial advisors, Palladium and Biologics.

33.     The Registration Statement fails to disclose the terms of Palladium's and Biologics' engagements, including: (i) the amount of compensation Palladium and Biologics have received or will receive in connection with their engagements; (ii) the amount of Palladium's and Biologics' compensation that is contingent upon the consummation of the Proposed Transaction; (iii) any past services Palladium and Biologics have performed for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation Palladium and Biologics received for providing such services.

34.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

35.     The omission of this material information renders certain portions of the Registration Statement materially misleading, including, inter alia, the following section of the

Registration Statement: "Background of the Merger Between Akers and MYMD."

36.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

37.     Plaintiff repeats all previous allegations as if set forth in full.

38.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

39.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's and MyMD's financial projections, the financial analyses performed by GVS, the background of the Proposed Transaction, and potential conflicts of interest faced by Palladium and Biologics. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

40.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

41.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

42.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

43.     Plaintiff repeats all previous allegations as if set forth in full.

44.     The Individual Defendants acted as controlling persons of Akers within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Akers, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the

unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

47.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Akers' stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Akers, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.       Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.       Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.       Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.       Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  March 18, 2021                                 **WEISSLAW LLP**

By   */s/ Mark. D. Smilow*
      Mark. D. Smilow
      Richard A. Acocelli (to be admitted *pro hac vice*)
      1500 Broadway, 16th Floor
      New York, New York 10036
      Tel: (212) 682-3025
      Fax: (212) 682-3010
      Email: msmilow@weisslawllp.com

**OF COUNSEL**                                         *Attorneys for Plaintiff*

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*